**William Castro**

8724 S.W. 72nd Street, #205      Admitted in New York
Miami, Florida 33173             New York Registration No. 2330074
C: (305) 898-3716                United States Supreme Court
F: (305) 598-2023                2nd, 3rd, 4th, 6th, 9th, 11th Circuit Courts of Appeals
wmcastronyatty@gmail.com         SDNY, EDNY, DMD

December 10, 2025

**BY ECF**

Judge John G. Koeltl
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

*Any response to the application should be filed by 12/16/25, so ordered.*

*JG Koeltl*
*12/11/25 U.S.D.J.*

Re: ***United States v. Gina Guy, case no. 1:25-cr-00029-JGK***
*Letter Motion Requesting Modification of Ms. Guy's*
*Conditions of Release Pending Trial by the Removal of*
*the Curfew Enforced by the Ankle Location Monitoring and*
*Computer Monitoring as Agreed to by U.S. Pretrial Services*

Dear Judge Koeltl,

In granting Ms. Guy's previous letter motion requesting to change a condition of her pretrial release agreed to by U.S. Pretrial Services (but opposed by the Government) from home detention to a curfew from 7:00 p.m. to 7:00 a.m. enforced by location monitoring[1] as directed by Pretrial Services, this Court recognized that

> [t]he conditions of pretrial release should be the "least restrictive" condition or combination of conditions that "will reasonably assure the appearance of the defendant as required and the safety of any other

---

[1] "Location monitoring is primarily 'a technological method of ensuring compliance' with other release conditions, such as travel restrictions." ***United States v. Brock***, 2021 WL 3616892, *3 (D.D.C.).

1

person and the community." 18 U.S.C. § 3142(c)(1)(B). The Court may at any time amend the conditions of release. Id. § 3142(c)(3).

[DE67:1]. On May 30, 2025, this Court, over the Government's objections, ruled that "taking all of the circumstances into account, it [wa]s plain that the requested change [wa]s justified and, together with all of the other conditions of pretrial release, would be the least restrictive condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of other persons and the community." *Id.* at 2.

Over six months afterwards, Ms. Guy requests this Court to again modify her present conditions of release pending trial from a Monday-Sunday 7pm-7am curfew enforced by U.S. Pretrial Services supervision through electronic ankle monitoring to less restrictive conditions by removing the curfew enforced by the ankle location monitoring and computer monitoring. Her other conditions of release would remain the same. No new grounds or facts exist which would support any objections the Government may conjure up to the requested modifications that would demonstrate how a curfew and electronic monitoring are necessary to reasonably assure the community's safety or Ms. Guy's appearance. In addition to maintaining fulltime employment and raising a two-year old boy, Ms. Guy has registered for General Educational Development ("GED") classes in order to obtain her GED diploma. Those classes will be held weeknights at Bergen Community College in Hackensack, New Jersey, commencing on January 5, 2026. As with the prior modifications request, S.D.N.Y. United States Pretrial Services Officer Ashley Cosme now recommends and agrees to these modifications.

On December 1, 2025, Ms. Cosme, Intensive Supervision Specialist for S.D.N.Y. U.S. Pretrial Services Office, sent undersigned counsel an email recommending modifications of Ms. Guy's conditions of release.[2] In relevant part, it stated:

---

[2]

*[T]he Pretrial Services Office has the best opportunity to observe and evaluate Defendant's behavior and conduct. In short, they are in the best position to gauge whether the conditions the Court has imposed are actually the least restrictive.* They also function as an independent third party, assessing Defendant from a non-adversarial perspective. While they cooperate with the United States Attorney, *see, e.g.,* 18 U.S.C. § 3154(8), (10), they work under the auspices of the Administrative Office of the United States Courts. *See id.* § 3152(a).

2

Pretrial Services is in support of the removal of the curfew enforced by location monitoring. In other words, we consent to the removal of the curfew and the ankle monitor. We understand that Ms. Guy has enrolled in GED evening classes and therefore, being off the curfew would be beneficial. In addition, we also consent to the removal of the computer monitoring condition. As per the District of NJ, the defendant remains in full compliance with all her conditions of release and there have been no instances of noncompliance.

Please let me know once a request is filed.[3]

After undersigned counsel provided AUSA Diarra Guthrie with that email from Ms. Cosme evincing her agreement to the modifications and requested the Government's position concerning the proposed modifications of Ms. Guy's conditions of release in the hope of not requiring this Court's intervention, AUSA Guthrie failed to confer with U.S. Pretrial Services before advising undersigned counsel that the Government objected to the modifications. Despite undersigned counsel's request to provide reasons for disagreeing with the requested modifications, AUSA Guthrie only stated that this letter motion indicate that "the

---

Additionally, it is Congress, not any entity in the courtroom, that delineates Pretrial Services' duties, which involves closely monitoring the conduct of individuals on pretrial release. *See generally id.* § 3154. Their purpose is to provide information to the Court to make informed decisions. *See* Nat'l Ass'n of Pretrial Servs. Agencies, Standards on Pretrial Release 58 (2020). Taking this information into account is critical to the Court's ability to craft pretrial release conditions that comply with the Bail Reform Act and the Constitution.

***United States v. Virgen-Mendoza***, 2023 WL 2058882, *5 (E.D.Cal.2023) (emphasis added).

[3] Andrew J. Dziopa, the Intensive Supervision Specialist from U.S. Pretrial Services who has directly supervised Ms. Guy in New Jersey, concurs in Ms. Cosme's recommendation and has further advised undersigned counsel that Ms. Guy has engaged in mental health treatment and has been compliant with her cyber restrictions.

3

Government oppose[d] the modifications and request[ed] one week from the date of your filing to file our opposition letter."[4]

## I.   Applicable law regarding the least restrictive conditions of pretrial release

The pretrial release of a person is "subject to the least restrictive further condition, or combination of conditions, that [a] judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(c)(1)(B). However, "[b]ail conditions are not set in stone." *United States v. Wang*, 670 F.Supp.3d 57, 65 (S.D.N.Y.2023). A "Court can … revisit its own bail decisions as an exercise of its inherent authority, even if the defendant's proffered new evidence does not meet the statutory standard for reopening the decision". *United States v. Kwok*, 2024 WL 54170, *2 (S.D.N.Y.). *See, e.g.*, *United States v. Virgen-Mendoza*, *supra*, at *4 ( "[T]he Court changed Defendant's condition from home detention to curfew because he had been compliant with his release conditions for nearly four months, communicates with Pretrial Services, and provides appropriate documentation as directed.… The Court deemed the modification appropriate because it reflected Defendant's progress on pretrial release."); *United States v. Martin*, 2022 WL 17343865, *1 (E.D.Cal.) (Over the Government's objection because the defendant had not demonstrated a change in circumstances, the Magistrate Judge converted the home detention to a curfew, "fram[ing] the order not as a modification, but rather a reflection of the reality that [the defendant] had been granted so many exceptions to his home detention that he was already essentially abiding by a curfew."). Thus,

---

[4] This is not the first time that the Government has ignored U.S. Pretrial Service's recommendation for modification of Ms. Guy's conditions of release. In Ms. Guy's reply [DE66:3] to the Government's response [DE65] to the previous motion for modification of conditions of release [DE63] filed on May 19, 2025, undersigned counsel pointed out that the Government failed to acknowledge U.S. Pretrial Service's recommendation that less restrictive conditions of release were appropriate or argue to what extent this Court should consider it. As in that instance, that U.S. Pretrial Services agrees that certain conditions of Ms. Guy's release should be modified because they are not presently necessary to protect the community or assure Ms. Guy's appearance should not excuse the Government from again pretending that that recommendation does not even exist.

4

[w]hen [a] defendant[] establish[es] that [he] will abide by [his] obligation to appear in court, logic dictates that the justification for imposing the existing release conditions lessens.... Put differently, if the Bail Reform Act requires no more than the least restrictive conditions needed to reasonably assure the defendant's appearance, then consistent compliance with existing conditions counsels in favor of reducing their severity on the theory that lesser conditions will suffice.

*United States v. Hutchins*, 298 F.Supp.3d 1205, 1208 (E.D.Wisc.2017).

> II.    **Ms. Guy's 18-month history of compliance with pretrial release conditions, along with her enrollment for weeknight classes to obtain her GED, support this Court's removal of the curfew enforced by the ankle location monitoring and computer monitoring in order to impose the least restrictive combination of release conditions approved by U.S. Pretrial Services**

On June 25, 2024 (the date of her arrest), Ms. Guy was granted pretrial release at her initial appearance upon a $250,000 personal surety bond posted by Zachary Edwards, the father of her two year-old son, and other conditions including home detention, surrender of her U.S. passport, and electronic ankle monitoring. Ms. Guy was subsequently allowed to relocate to an apartment in New Jersey where she is currently supervised and has been employed.

From September 11, 2024 until May 16, 2025, Ms. Guy worked at a dry cleaners in Teaneck, New Jersey from Monday to Thursday, 12noon to 6pm, and Fridays from 11am-5pm. During those days, she was allowed to leave her apartment one hour before her work started and had to return home one hour after her work ended. During the week, she either took her son to her grandparents' house in New Jersey or the grandparents picked up her son from Ms. Guy's apartment, and she picked up her son from the grandparents' house after work. On Saturdays, Ms. Guy was allowed from 2-5pm to take her son to parks or shop for him, and was permitted on Sundays to go to the market from 10am-1pm and to take her son to parks from 3-6pm.

In the almost 1 ½ years since Ms. Guy has been on pretrial release, U.S. Pretrial Services has confirmed that Ms. Guy has fully complied with all required conditions of release, including 1) appearing for arraignment and conference before this Court, 2) being granted permission by this Court to drive from New Jersey to

5

JFK airport to pick-up undersigned counsel for a Court conference on February 5, 2025 and to drive him back to JFK airport for his departure, and to then drive back to New Jersey, and 3) being granted permission by this Court to travel on March 12, 2025 from New Jersey to Central Islip in the EDNY to meet with undersigned counsel where the latter had a sentencing hearing in an unrelated case.

On May 19, 2025, Ms. Guy began working as a secretary at a commercial roofing contractor in Lyndhurst, New Jersey. She continues to work there Mondays through Fridays from 8am-4pm. After continuing to abide by conditions of release modified by this Court on May 31, 2025 from home detention to a curfew from 7:00 p.m. to 7:00 a.m. enforced by location monitoring, U.S. Pretrial Services now agrees and recommends that Ms. Guy's present conditions of release should be further modified to less restrictive conditions by removing the curfew enforced by the ankle location monitoring and computer monitoring.[5]

As noted earlier, Ms. Guy is scheduled to commence GED classes on January 5, 2026 at Bergen Community College located at 355 Main Street, Hackensack, New Jersey 07601, and run from 6:15-9:15pm every weeknight. She should be eligible to

---

[5]

> [T]he Pretrial Services Office has the best opportunity to observe and evaluate Defendant's behavior and conduct. In short, they are in the best position to gauge whether the conditions the Court has imposed are actually the least restrictive. They also function as an independent third party, assessing Defendant from a non-adversarial perspective. While they cooperate with the United States Attorney, see, e.g., 18 U.S.C. § 3154(8), (10), they work under the auspices of the Administrative Office of the United States Courts. See id. § 3152(a). Additionally, it is Congress, not any entity in the courtroom, that delineates Pretrial Services' duties, which involves closely monitoring the conduct of individuals on pretrial release. See generally id. § 3154. Their purpose is to provide information to the Court to make informed decisions. See Nat'l Ass'n of Pretrial Servs. Agencies, Standards on Pretrial Release 58 (2020). Taking this information into account is critical to the Court's ability to craft pretrial release conditions that comply with the Bail Reform Act and the Constitution.

**United States v. Virgen-Mendoza**, 2023 WL 2058882, *5 (E.D.Cal.2023) (emphasis added).

take the GED test by April 2026.[6] Her motivation to obtain her GED is two-fold. First, Ms. Guy dropped out of school in 7th grade after her parents divorced. She moved from Arizona to Los Angeles with her mother who never enrolled her in school. Instead, Ms. Guy started working and never again attended school. She recognizes that a GED will give her knowledge of topics such as mathematics, language, science, and history and is usually a minimum requirement that will allow her to have more and higher-paying employment options in the future. When she took the GED placement test on December 9, 2025, Ms. Guy also became interested in enrolling in interior design classes after she obtains her GED.

Second, in the event Ms. Guy is convicted of any crimes in this case and sentenced to a term of incarceration, having a GED will benefit her in two ways. With a GED, Ms. Guy would immediately be eligible to receive 54 days credit yearly instead of 42 days if she did not have a GED. Also, under the First Step Act, having a GED is one of the 13 criteria to make her eligible to receive an additional 10 days credited to her prison term.

Taking all of the circumstances into account, including 1) Ms. Guy's impeccable history of complying with all conditions of release since her arrest on June 24, 2024, 2) U.S. Pretrial Services' recommendation that removing the curfew enforced by the ankle location monitoring and computer monitoring would result in the least restrictive combination of conditions that will reasonably assure Ms. Guy's appearance and the safety of other persons and the community, and 3) U.S. Pretrial Services' assessment that being off the curfew would be beneficial to Ms. Guy attending weeknight GED classes, Ms. Guy requests this Court to grant this letter motion.

Sincerely,

*/s/William Castro*
William Castro
Attorney for Gina Guy

cc: AUSA's Diarra Guthrie and Lauren Phillips

Joseph Corozzo and Angela Lipson
Attorneys for co-defendant Rosanna Lisa Stanley

---

[6] Cost to take the test is $25; if Ms. Guy initially fails it, the cost to retake is $10; and if she fails it a second time, the second retake would be free.